# United States Court of Appeals for the Federal Circuit

2008-1102

FLORIDA CITRUS MUTUAL,
A. DUDA & SONS (doing business as Citrus Belle), CITRUS WORLD, INC.,
and SOUTHERN GARDENS CITRUS PROCESSING CORPORATION
(doing business as Southern Gardens),

Plaintiffs-Appellants,

v.

UNITED STATES,

Defendant-Appellee,

and

FISCHER S/A AGROINDUSTRIA,

Defendant-Appellee,

and

CITRUS PRODUCTS, INC. and SUCOCITRICO CUTRALE LTDA,

Defendants-Appellees.

Matthew T. McGrath, Barnes, Richardson & Colburn, of Washington, DC, argued for plaintiffs-appellants. With him on the brief was Stephen W. Brophy.

Michael J. Dierberg, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for defendant-appellee United States. With him on the brief were Jeffrey S. Bucholtz, Acting Assistant Attorney General; Jeanne E. Davidson, Director; and Franklin E. White, Jr., Assistant Director. Of counsel on the brief was Mildred E. Steward, Senior Attorney, Office of Chief Counsel for Import Administration, United States Department of Commerce, of Washington, DC. Of counsel was Mykhaylo A. Gryzlov.

Robert G. Kalik, Kalik Lewin, of Bethesda, Maryland, for defendant-appellee Fischer S/A Agroindustria. With him on the brief was Brenna S. Lenchak.

Christopher Dunn, Heller Ehrman LLP, of Washington, DC, for defendants-appellees Citrus Products, Inc., and Sucocitrico Cutrale Ltda. With him on the brief was Valerie S. Ellis.

Appealed from: United States Court of International Trade

Judge Evan J. Wallach

# United States Court of Appeals for the Federal Circuit

2008-1102


FLORIDA CITRUS MUTUAL,
A. DUDA & SONS (doing business as Citrus Belle), CITRUS WORLD, INC.,
and SOUTHERN GARDENS CITRUS PROCESSING CORPORATION
(doing business as Southern Gardens),

Plaintiffs-Appellants,

v.

UNITED STATES,

Defendant-Appellee,

and

FISCHER S/A AGROINDUSTRIA,

Defendant-Appellee,

and

CITRUS PRODUCTS, INC. and SUCOCITRICO CUTRALE LTDA,

Defendants-Appellees.


Appeal from the United States Court of International Trade in case no.
06-00114, Judge Evan J. Wallach.

_____

DECIDED: December 18, 2008
_____


Before MICHEL, <u>Chief Judge</u>, and MOORE, <u>Circuit Judge</u>, O'GRADY, <u>District Judge</u>.[*]

---

[*]        Honorable Liam O'Grady, District Judge, United States District Court for the Eastern District of Virginia, sitting by designation.

O'GRADY, <u>District Judge</u>.

The question presented in this appeal is whether the Department of Commerce ("Commerce") reasonably interpreted ambiguous language in 19 U.S.C. § 1677a(c)(2)(A). This language allows a reduction in the U.S. price of imported merchandise for "United States import duties" before that domestic price is compared against the foreign price in an antidumping analysis. The court finds Commerce's interpretation reasonable because it accords with the statutory language and accurately reflects the overall duty costs to importers. Accordingly, we <u>affirm</u> the decision of the Court of International Trade.

## I.  BACKGROUND

### A.  Proceedings Before The Department of Commerce.

Appellants are four U.S. orange juice producers, Florida Citrus Mutual, A. Duda & Sons, Citrus World, Inc., and Southern Gardens Citrus Processing Corp., collectively referred to as "FCM." Appellees are Brazilian orange juice producers: Citrosuco Paulista S.A. d/b/a Fischer S/A-Agroindustria ("Fischer"), and Citrus Products, Inc. and Sucocitrico Cutrale SA ("Cutrale").

On December 27, 2004, FCM filed an antidumping petition with the Department of Commerce and the U.S. International Trade Commission ("ITC"), alleging that sales of two types of frozen orange juice from Brazil were materially injuring the domestic industry. On February 11, 2005, Commerce launched an investigation. It selected Fischer, Cutrale, and Montecitrus Industria e Comercio Limitada ("Montecitrus")—the

three largest Brazilian orange juice importers—as mandatory respondents in the investigation. On March 7, 2005, Commerce distributed the standard antidumping duty questionnaire to the Brazilian companies. Section C of the questionnaire asked the respondents to report the "unit amount of any customs duty paid on the subject merchandise." Fischer and Cutrale reported figures for "import duties" that included refunds the companies had received as part of U.S. "drawback" programs. These drawback programs allow foreign companies to receive refunds of duties paid on merchandise that is exported, or destroyed, within three years of entry into the United States. Over FCM's objection, Commerce calculated the "constructed export price" using <u>net</u> import duties, which were the duties paid to Customs minus the drawback refunds as reported by Fischer and Cutrale. Fischer and Cutrale argued that the drawback refunds should be used to offset U.S. duties paid as that amount more accurately reflected the actual duties paid by the companies on the imported orange juice.

Whether Fischer and Cutrale were entitled to the proposed offset for drawback refunds was an issue of first impression for Commerce. Commerce performed an antidumping analysis—comparing export price or constructed export price in the United States to the normal value in the foreign market.[1] In its Final Determination, Commerce

---

[1] Under the statute the terms "export price" and "constructed export price" are defined as follows:

(a) Export price. The term "export price" means the price at which the subject merchandise is first sold (or agreed to be sold) before the date of importation by the producer or exporter of the subject merchandise outside of the United States to an unaffiliated purchaser in the United States or to an unaffiliated purchaser for exportation to the United States, as adjusted under subsection (c) of this section.

concluded that the applicable statute, 19 U.S.C. § 1677a(c)(2)(A), allowed the offset for drawback refunds. It therefore calculated a constructed export price for Fischer and Cutrale by reducing the U.S. price of the orange juice by the net duties paid. In its Issues and Decision Memorandum, Commerce explained that calculating net import duties would "encompass the net duty experience of the respondents." Commerce further reasoned that the calculation of net import duties was consistent with the statutory mandate to reduce U.S. price by all movement expenses incident to importing the goods into the United States. It concluded that allowing the offset for drawback refunds provided a fair comparison to normal value of the orange juice in the Brazilian market.

On February 2, 2006, FCM filed a ministerial error allegation, which asserted that Commerce had erred in calculating dumping margins for Cutrale and Fischer in its Final Determination. On February 21, 2006, Commerce published an Amended Final Determination, in which it corrected various ministerial errors and made minor adjustments to its original calculations, but rejected FCM's challenge to its price calculation methodology. On March 9, 2006, Commerce published its antidumping order as <u>Antidumping Duty Order: Certain Orange Juice from Brazil</u>, 71 Fed. Reg. 12,183 (Dep't of Commerce Mar. 9, 2006).

---

(b) Constructed export price. The term "constructed export price" means the price at which the subject merchandise is first sold (or agreed to be sold) in the United States before or after the date of importation by or for the account of the producer or exporter of such merchandise or by a seller affiliated with the producer or exporter, to a purchaser not affiliated with the producer or exporter, as adjusted under subsections (c) and (d) of this section.

19 U.S.C. § 1677a(a)-(b).

**B.    Proceedings Before the Court of International Trade.**

On April 6, 2006, FCM timely filed a civil action in the U.S. Court of International Trade.  On May 23, 2006 and June 6, 2006, respectively, the court granted Fischer and Cutrale's motions to intervene as interested parties.  The court held oral argument on July 25, 2007, wherein FCM asserted that Commerce's determination to adjust the U.S. price by the net import duties (allowing the drawback refund offset) was improper.  FCM also argued that Commerce employed improper methodology for calculating the net import duties.

The court rejected FCM's arguments in their entirety.  In <u>Florida Citrus Mutual v. United States,</u> 515 F. Supp. 2d 1324 (Ct. Int'l Trade 2007), the court found that Commerce had reasonably interpreted "United States import duties" to mean net import duties, and thus sustained Commerce's determination.  It reasoned that Commerce's construction of the statute reflected "a policy decision which was made within the statutory scheme and is well within the bounds of the agency's discretion in accordance with <u>Chevron</u>."  <u>Id.</u> at 1332.  The court rejected FCM's argument that because the drawback refunds came later in time they could not be "incident to bringing the subject merchandise" into the United States, reasoning that the refunds should be considered part of the movement expenses enumerated by the statute.  <u>Id.</u> at 1334.  The court concluded that Commerce's methodology produced an accurate U.S. price in accord with the statute.

## II.    DISCUSSION

**A.    Jurisdiction.**

FCM appeals from the decision of the U.S. Court of International Trade entered on September 13, 2007. The Court of International Trade exercised subject matter jurisdiction under 28 U.S.C. § 1581(c). Appellants filed a timely notice of appeal on November 9, 2007. This court has jurisdiction over the appeal under 28 U.S.C. § 1295(a)(5).

**B.    Standard of Review.**

"We review de novo whether Commerce's interpretation of a governing statutory provision is in accordance with law, but we do so within the framework established by Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837 (1984)." Agro Dutch Indus. Ltd. v. United States, 508 F.3d 1024, 1029-30 (Fed. Cir. 2007). "Under Chevron, a reviewing court must first ask 'whether Congress has directly spoken to the precise question at issue.'" FDA v. Brown & Williamson Tobacco Corp., 529 U.S. 120, 132 (2000) (quoting Chevron, 467 U.S. at 842). "If Congress has done so, the inquiry is at an end; the court 'must give effect to the unambiguously expressed intent of Congress.'" Id. at 132 (quoting Chevron, 467 U.S. at 843). "In the absence of clear direction from the statute," we must proceed to "ask whether there is ambiguous statutory language that might authorize the agency to fill a statutory gap," and "whether Commerce's interpretation of ambiguous statutory language is based on a permissible interpretation of the statute." Agro Dutch Indus., 508 F.3d at 1030 (internal quotation marks omitted); see also Chevron, 467 U.S. at 843 ("[I]f the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute."). Ultimately, "this court will uphold Commerce's determinations, findings, and conclusions unless

they are 'unsupported by substantial evidence on the record, or otherwise not in accordance with the law.'" Wheatland Tube Co. v. United States, 495 F.3d 1355, 1359 (Fed. Cir. 2007) (quoting 19 U.S.C. § 1516a(b)(1)(B)(i)).

**C.      Analysis.**

**1.      Commerce's Decision To Account For Drawback Refunds Was Reasonable.**

The drawback program permits importers to claim reimbursement of 99 percent of U.S. duties paid on imports when "commercially interchangeable" merchandise is either (1) exported from the United States, or (2) destroyed within three years of the date of importation. 19 C.F.R. § 191.32(a) (2008); see generally 19 U.S.C. § 1313. The Code of Federal Regulations defines "drawback" as "the refund or remission, in whole or in part, of a customs duty, fee or internal revenue tax which was imposed on imported merchandise under Federal law because of its importation." 19 C.F.R. § 191.2(i). Thus, drawbacks allow import duties, which are levied on goods imported into the United States for sale, to be refunded when substituted goods are exported, destroyed, or used in manufacturing instead of being sold in the United States. As a practical matter, U.S. Customs and Border Protection receives a deposit of the duties due from the importer, which is later adjusted if the importer exercises its drawback rights in a timely fashion.

Fischer and Cutrale claimed and received drawback refunds under two statutory provisions: 19 U.S.C. §§ 1313(b) and 1313(j)(2). Cutrale claimed refunds under Section 1313(j)(2), which allows a "substitution drawback." Under this provision, an importer may receive duty refunds if it then exports from the United States "commercially interchangeable" merchandise within three years. 19 U.S.C. § 1313(j)(2). Fischer

claimed refunds under Section 1313(b), which allows a "manufacturing substitution drawback." Id. § 1313(b). Under this provision, if the importer uses the substituted merchandise in further manufacturing or production in the United States, the importer becomes eligible for "an amount of drawback equal to that which would have been allowable had the merchandise used therein been imported." Id. The importer may claim the refund after the "exportation or destruction" of the substituted merchandise. 19 C.F.R. § 191.22(a). Before Commerce, Fischer asserted that adding oils and essences to its orange juice constituted a further manufacturing process in the United States, which qualified it for "manufacturing substitution drawback" refunds under Section 1313(b).

Dumping is the sale of foreign goods in the United States at less than fair value. See 19 U.S.C. § 1677(34). To determine whether dumping occurred, Commerce compares the "export price" or "constructed export price" with the normal price of the goods in the foreign market. Generally under U.S. antidumping laws, constructed export price is the price at which the goods under investigation are sold, or agreed to be sold, for exportation to the United States to the first unaffiliated purchaser in the United States. See 19 U.S.C. § 1677a(b). Commerce adjusts this price in accordance with statutory factors to achieve "a fair 'apples-to-apples' comparison" between U.S. price and foreign market value "at a similar point in the chain of commerce." Torrington Co. v. United States, 68 F.3d 1347, 1352 (Fed. Cir. 1995). If the adjusted price of the goods is less than the normal value of the goods in the foreign market, and there is a finding of material injury, Commerce will issue an affirmative finding of dumping. Agro Dutch Indus., 508 F.3d at 1028 (citing 19 U.S.C. §§ 1673-1673(d)). Commerce will issue an

antidumping order that imposes additional dumping duties equal to "the amount by which the normal value exceeds the export price or constructed export price of the subject merchandise." 19 U.S.C. § 1677(35)(A).

Section 1677a(c)(2)(A) requires that U.S. price shall be reduced by:

the amount, if any, included in such price, attributable to any additional costs, charges, or expenses, and United States import duties, which are incident to bringing the subject merchandise from the original place of shipment in the exporting country to the place of delivery in the United States.

To achieve this "apples-to-apples" comparison the agency should adjust the U.S. price by subtracting the "United States import duties" paid. Fischer and Cutrale argued—and Commerce agreed—that "United States import duties" should be calculated by including an offset for the drawback refunds each company claimed. Because this offset lowered the amount of import duties paid, and that amount was subtracted from the price, the offset raised the constructed export price. A higher price makes it less likely that Commerce will make a finding of dumping because dumping is present only where the adjusted price is less than the normal value of the goods in the foreign market. See Agro Dutch Indus., 508 F.3d at 1028.

The statute neither defines "import duties" nor specifies whether "import duties" should include the net import duties (taking into account drawback refunds) or gross duties. The statute therefore is ambiguous, and Commerce was entitled to supply its own reasonable interpretation. See Agro Dutch Indus., 508 F.3d at 1030; see also Wheatland Tube, 495 F.3d at 1359-60 (holding that the term "United States import duties" in Section 1677a(c)(2)(A) is ambiguous). We now must ask "whether Commerce's interpretation of ambiguous statutory language is based on a permissible

interpretation of the statute." FAG Italia S.p.A. v. United States, 291 F.3d 806, 815 (Fed. Cir. 2002).

We find Commerce's interpretation reasonable because it accords with the statutory language and accurately reflects the overall duty costs to importers. The statute requires that the price be reduced by the "amount attributable to any . . . United States import duties, which are incident to bringing the subject merchandise . . . to the place of delivery in the United States." 19 U.S.C. § 1677a(c)(2)(A). First, rather than "United States import duties," which could mean either gross or net import duties, Congress could have used the terms "gross import duties," or perhaps "duties assessed at the time the subject merchandise is imported." Either of those phrases would have foreclosed the interpretation that Commerce adopted here. But Congress did not, instead opting for the unqualified phrase "import duties." Second, drawback refunds are "attributable to" import duties because "attributable to" describes a loose associative relationship. See The American Heritage Dictionary of the English Language 85 (1976) (defining "attribute" as "to regard or assign as belonging to or resulting from someone or something; ascribe"). Because drawback refunds cannot be obtained without the foreign company first importing merchandise and being assessed import duties on that merchandise, the duties are part and parcel of the import duty regime. Furthermore, Congress' use of the inclusive term "any" in front of "import duties" indicates that the adjustment should account for the entire universe of import duties. Finally, drawback refunds also are "incident to bringing the subject merchandise . . . into the United States." "Incident to" commonly means "contingent upon or related to something else." Id. at 664. Drawback refunds are contingent upon and related to importing merchandise

because they cannot be claimed without first importing merchandise and paying the duties to Customs. In sum, the statute is broad enough to allow the offset and Commerce's interpretation was reasonable.

Moreover, as noted above, the purpose of adjusting U.S. price by movement costs is to enable a fair "apples-to-apples" comparison between foreign and domestic price. This goal is furthered by inclusion of all import expenses—including the offset for refunds—because the resulting amount accurately represents the importer's overall duty liability. Appellants insist that drawback refunds cannot be considered because such refunds are not assessed on goods at the time of importation. But the statute does not contain any such requirement. Indeed, appellants' interpretation would not reflect the total amount of duties the importer actually pays on the imported goods because the "import duties" amount would not include duties that were later refunded. In accord with its statutory mandate to calculate the most accurate U.S. price for comparison with foreign value, Commerce reasonably discounted import duties for which the companies ultimately were reimbursed. This decision was consistent with the statutory scheme and well within Commerce's authority under <u>Chevron</u>.

**2.    Commerce's Method Of Calculating Net Duties Was Reasonable.**

Appellants also contend that Commerce's methodology in calculating net duties was flawed for two reasons: (1) there is no proof that the net duties or refunds were "passed through," <u>i.e.</u>, reflected in the price paid by U.S. purchasers; and (2) Commerce counted duty refunds received by Cutrale during the period of investigation on orange juice that entered the U.S. <u>before</u> the period of investigation. Under the law of this court, "Commerce is the 'master of antidumping law,' and reviewing courts must accord

deference to the agency in its selection and development of proper methodologies." Thai Pineapple Pub. Co. v. United States, 187 F.3d 1362, 1365 (Fed. Cir. 1999) (citations omitted). Thus, Commerce's methodologies for calculating dumping margin are "presumptively correct." Id.

Section 1677a(c)(2)(A) requires that an adjustment to price be based upon import duties that are "included in such price." Appellants argue that this language requires foreign producers to adduce evidence demonstrating that the drawback refunds actually affected the price paid by U.S. purchasers. Commerce reasonably concluded that such proof is not required. In Daewoo Electronics Co. v. International Union, we interpreted similar language in Section 1677a(d)(1)(C), which allowed a price adjustment "only to the extent that such taxes are added to or included in the price of . . . merchandise." 6 F.3d 1511, 1514 (Fed. Cir. 1993). We held that where Commerce adjusts domestic prices for excise taxes not charged on exports, it need not inquire as to whether those taxes are "passed through" to the customer. "The statutory language does not mandate that [the International Trade Administration] look at the effect of the tax on consumers rather than on the [foreign] company." Id. at 1517. Likewise here, Commerce need not analyze whether taxes are "passed through" to U.S. customers. As appellants admit, the statute contains no provision mandating such an inquiry.[2]

Appellants' second challenge is that Commerce erroneously counted drawback refunds that Cutrale received for merchandise imported prior to the period of

---

[2]     As noted by the Court of International Trade, when defining the term "price adjustment" in its regulations, Commerce commented that "price adjustments include such things as discounts and rebates that do not constitute part of the net price actually paid by a customer." Florida Citrus, 515 F. Supp. 2d at 1333 (citing Antidumping Duties: Countervailing Duties, 62 Fed. Reg. 27,296, 27,344 (May 19, 1997)).

investigation. The statute requires adjustments for "costs, charges, expenses and United States import duties," but, as explained above, it does not restrict these adjustments only to expenses incurred at the time of importation. Under Sections 1313(b) and 1313(j)(2) importers have up to three years to claim drawback refunds, even though the import duties are paid to Customs at the time of importation. Because of this three-year lag, it is inherent that some of the claimed refunds will pertain to merchandise actually imported prior to the period of investigation.[3] In light of the discretion vested in Commerce to interpret the antidumping statute, it was reasonable to allow an offset for drawback refunds claimed for merchandise imported prior to the period of investigation.

### III.    CONCLUSION

For the foregoing reasons, we affirm the decision of the Court of International Trade. Each party shall bear its own costs.

<u>AFFIRMED.</u>

---

[3]    This could result in a partial wash, as foreign companies presumably will import merchandise during the period of investigation for which they might claim refunds <u>after</u> the period ends—too late to receive any adjustment in price.